UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELA WOODS<br>1703 Old Drummer Boy Lane<br>Fort Washington, MD 20744<br><br>   *Plaintiff*,<br><br>v.<br><br>G2 SECURE STAFF, LLC<br>400 E. Las Colinas Blvd., Suite 750<br>Irving, TX 75039<br><br>   *Defendant*. | Civil Action No. 1:22-cv-80<br><br>Jury Trial Demand |

## COMPLAINT

Comes now Plaintiff Angela Woods (hereinafter "Plaintiff Woods," "Plaintiff," or "Ms. Woods") by and through her attorneys, and hereby files this Complaint against Defendant G2 Secure Staff, LLC (hereinafter "Defendant" or "G2 Secure") Plaintiff Woods seeks relief pursuant to the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12112 *et seq*., and Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. and 29 C.F.R. 825 *et seq*., including but not limited to declaratory, injunctive, and other equitable relief, liquidated, compensatory and punitive damages, litigation expenses, and reasonable attorneys' fees, based on Defendant's violation of Plaintiff's rights.

## JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12112 *et seq*., and 29 U.S.C. § 2601 *et* seq and 29 C.F.R. 825 *et seq*.

2. Plaintiff has exhausted all administrative remedies prior to filing suit.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events

1

or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

4.  Plaintiff Woods is a female citizen of the United States and a resident of the state of Maryland. Ms. Woods is a former Baggage Service Agent employed through G2 Secure at the Ronald Reagan Washington National Airport in Washington, D.C.

5.  Defendant G2 Secure Staff, LLC is an aviation staffing firm headquartered in the state of Texas. G2 Secure places staff agents across 54 airports in several specialized capacities including but not limited to cargo handling, ground handling, passenger assistance, terminal services, and security services.

## FACTS

6.  Angela Woods was employed through G2 Secure as a Baggage Service Agent and worked at the Ronald Reagan Washington National Airport. Ms. Woods duties included providing customer support service and baggage handling service for passengers traveling to the Ronald Reagan National Airport in Washington, D.C. Since her transition to the Baggage Service Office, ("BSO") Ms. Woods worked on the BSO Office Team under an American Airline Contract and was scheduled for a three-day weekend schedule. Ms. Woods suffers from a sleeping disorder, glaucoma, high blood pressure, diabetes, and venous leg insufficiency. In addition to her own condition, Ms. Woods cares after her blind daughter.

7.  In 2018, a BID work schedule was offered to a group of less senior employees, BSO agents, to work between the hours of 22:00-06:00 hours. Ms. Woods was not offered this schedule and she did not find out about the schedule until three weeks into her own BID schedule. After finding out about this schedule which she was not offered, Ms. Woods requested to be reassigned to the overnight shift, working three days a week from Saturday to Monday. This request and schedule were granted.

8. On October 16, 2018, Ms. Woods was notified, without sufficient notice and via text message, that she was being placed back on the morning shift by Office Manager Sonia Johnson. Ms. Johnson indicated to Ms. Woods in a subsequent text message, that she felt that in Ms. Wood's condition the morning shifts were slower and would work better for her. Ms. Woods was not given an official reason for reassignment.

9. On November 3, 2018, after realizing that this was an unfair discriminatory practice, Ms. Woods requested a meeting with the General Manager, Gino Augustino, the Office Manager, Sonia Johnson, and the Human Resource Manager, Selina Grant to be held November 5, 2018.

10. On November 5, 2018, following the meeting, Ms. Wood's return to the overnight shift was granted by Mr. Augustino but carried a punitive caveat that if the Baggage Service production rating dropped, Ms. Woods would be reassigned to the morning shift. This was an unfair burden and overwhelming responsibility because it placed the success of the Baggage Service office in Ms. Wood's sole responsibility. Ms. Woods had a little less than three months to work overnight schedule before a new BID schedule was announced that was much worse than any BID schedule the BSO agents previously encountered and did not include the three-day weekend schedule that Ms. Woods was previously working. This type of BID was used as a tactic to force BSO agents to quit.

11. The BSO agents asked Office Manager Sonia Johnson, to intercede on their behalf because she knew the scheduling needs of her office. Ms. Johnson assured them that the impending BID was out of her hands and in the hands of the General Manager, Gino Augustino. The BSO agents knew, in advance of this BID going into effect, that they were going to incur hardships working the proposed pending schedule because of reduced wages, childcare, and transportation needs. Ms. Woods again informed Ms. Johnson of the BSO agent's concerns and that the agents were collectively sending a set of petitions to the Regional Human Resources Office. The BID was

unfairly balanced, turning part-time agents into almost full-time agents and turning full-time agents into part-time waged agents. Outside of G2 Secure, Ms. Woods was already committed to a five-day workweek from a government employer, working on occasion fourteen hours a day. Ms. Woods always worked a three-day weekend schedule for G2 Secure upon transitioning to the Baggage Service Office, due to the official start time switching from 04:00 to 06:00 hours and because she no longer had the flexibility of trading shifts with other agents. Furthermore, Ms. Woods felt personally attacked when the three-day work week was completely removed from the BID schedule, which otherwise would have allowed her to keep her weekend work separate from her weekday government employment, giving her the opportunity to work and minimize flair-ups from her disability. All other BID schedule lines were left intact apart from reducing the number of hours and offering another schedule time slot which would have separated her, a mother, from her child.

12.     The hardship that the pending schedule created for Ms. Woods included sleeplessness, exacerbating her disabilities. The hardship caused her to live out of her suitcase while transitioning between jobs and caused her to not see her home until the weekends. When Ms. Woods inquired as to why the three-day shift covering Saturday, Sunday, and Monday was no longer on the schedule, Ms. Woods was told that this shift was no longer needed. Ahead of the new schedule going into effect, Mariah Wells, another BSO agent in the office, quit because she had the least amount of seniority and, as an expectant mother, was afraid she would be scheduled with hours she could not commit to. Additionally, during the tenure of the new BID schedule, Melissa Nickerson, another BSO agent in the office, never worked her assigned hours and continued to report for duty under prior BID hours from 09:00-17:00 hours without repercussion.

13.     On January 31, 2019, Ms. Woods sent an email to G2 Secure management attaching two petitions signed by several BSO Agents to be forwarded to G2 Regional Human Resources. The first petition, drafted January 10, 2019, and signed by Ms. Woods and nine other BSO agents,

requested a recall to the G2 BID Schedule on the grounds of improper distribution of manpower hours, a breach in contract to the hours each agent was initially hired under, and a negative impact to work life balance for the majority of agents. The BSO Agents also requested that the G2 office manager, who best knows the needs of her office staff and effective operational needs to ruin an efficient office, be allowed to schedule the work hours of her employees. The second petition, drafted January 10, 2019 and signed by Ms. Woods and nine other BSO agents, requested a G2 Agent pay increase to $14.15 an hour to fairly compensate for the above and beyond customer service provided by the BSO Agents and to alleviate a pay disparity between her work group, the office team, and the outside team which received a pay increase to $12.15 an hour as of January 2, 2019. The outside team agents were salaried and allowed in received additional services wages in tips, creating a disparity between the two group's pay.

14. The petition that was sent requesting a recall to the G2 Secure BID schedule received enough attention to create a positive change but not without creating a mood of hostility, and a retaliatory office environment. Although there was no attention given to increased pay request, the Baggage Service Office did receive another BID schedule list that worked to improve start times and worked to ensure that the BSO agents who needed a full-time salary would benefit. However, there was no amendment to the BID schedule lists that brought back the three-day Saturday through Monday 22:00-06:00 hour shift that Ms. Woods worked.

15. On February 28 2019, Ms. Woods submitted a BID Schedule Reasonable Accommodation Request to G2 Secure Management. In her letter, Ms. Woods requests a reinstatement to three-day workweek schedule which was previously approved in September 2018 to take care of her health while earning part-time wages. In a previous agreement, Ms. Woods was initially allowed to work three workdays at a different start time. In the Accommodation Request, Ms. Woods requested that her schedule reflect BID Line No. 14 with an adjustment of days worked

5

to Tuesdays, Thursdays, and Fridays, a one workday reduction and the closest to her prior three-day workweek. Ms. Woods was subsequently offered two BID schedules, neither was of which offered her the previously approved three-day workweek. Ms. Woods had worked three-day workweeks since her transition to the American Airlines baggage service contract.

16. In February 2019, BSO agent Kendra Jordan cautioned Ms. Woods that her job was in jeopardy and that General Manager Gino Augustino would try to fire Ms. Woods.

17. In February 2019, during a change in work shift, BSO agent Lamego Spencer stated that Office Manager Sonia Johnson Sonia had said that Ms. Woods would be retiring soon. Ms. Woods did not understand why Ms. Johnson was making this statement. Ms. Woods replied that she was not going anywhere because she planned to work another ten years. Ms. Spencer smiled swiveling in her chair and repeated the same statement and Ms. Woods dismissed the comment.

18. From March 14-28, 2019, Ms. Woods took leave for emergency medical leave when she was faced with a family medical emergency which required her to care for her legally blind daughter who underwent surgical procedure.

19. On March 18, 2019, Ms. Woods sent a text message to Ms. Johnson informing her that Ms. Wood's daughters were in surgery that that she would be out of work until the following Wednesday and that she needed badging paperwork left for her to pick up.

20. On March 28th 2019, Ms. Woods was terminated via U.S. Mail based on a No-Call/No show allegation. The employer's reason was unsubstantiated as Ms. Wood's employment termination was based on a discriminatory and retaliatory discharge that precipitated from the events in 2018-2019.

18. In or around April 2019, Myrtle Goodwin, who remains employed with G2 Secure, was approached and asked what was wrong and if she was feeling differently because Ms. Johnson and Mr. Augustino had fired Ms. Woods.

19. Plaintiff filed an administrative complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") and exhausted all administrative remedies and was issued a Right to Sue letter by the EEOC on October 14, 2021.

### COUNT I
### Violation of the Americans with Disabilities Act ("ADA")
### 42 U.S.C. § 12112 *et seq.*
### (Discrimination based on Disability)

20. Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

21. At all pertinent times, Defendant was an employer within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq*.

22. At all pertinent times, Plaintiff was an employee entitled to protection under the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq*.

23. The Americans with Disabilities Act prohibits discrimination in employment based on an individual's disability.

24. Defendant, in violation of the Americans with Disabilities Act, knowingly and intentionally engaged in unlawful discrimination against Plaintiff based on her disability. Specifically, Defendant denied Ms. Woods a three-day weekend shift to accommodate her disability which was already previously approved and after she submitted signed petitions for schedule flexibility and terminated her employment despite having previously notified her office manager that she was taking emergency medical leave caring for her daughter who was undergoing a surgical procedure in a medical emergency.

25. As a direct and proximate cause of the Defendant's actions, Plaintiff Woods has suffered sleeplessness, emotional distress, embarrassment, anxiety, depression, fatigue, mental distress, humiliation, and damage to her employment.

26. Defendant had no legitimate business reason for any such acts.

27. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

## COUNT II
### Violation of the Family and Medical Leave Act ("FMLA")
### 29 U.S.C. § 2601 *et seq.*, and 29 C.F.R. 825 *et seq.*

28. Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

29. At all pertinent times, Defendant was an employer within the meaning of the Family and Medical Leave Act, 29 U.S.C. Sec. 2601 *et seq.* and 29 C.F.R. 825 *et seq.*

30. At all pertinent times, Plaintiff was an employee entitled to protection under the Family and Medical Leave Act, 29 U.S.C. Sec. 2601 *et seq.* and 29 C.F.R. 825 *et seq.*

30. The Family and Medical Leave Act, 29 U.S.C. Sec. 2601 *et seq.* and 29 C.F.R. 825 *et seq.*, requires all employers, including public employers, of twenty or more employees to provide up to twelve weeks of unpaid family leave for the birth of a child, adoption or foster care or to care for a seriously ill family member and up to twelve weeks of unpaid medical leave to recover from a serious illness rendering the employee unable to work. The leave may also be taken intermittently, in the case of a serious health condition, as defined in the Family and Medical Leave Act, including treatment for substance abuse. A violation is willful if the employer knows, or shows reckless disregard for whether its conduct violates the FMLA. The Family and Medical Leave Act prohibits an employer from denying an employee his/her rights under this Act, and prohibits an employer from discriminating against an employee because he requests FMLA leave or retaliating against an employee because he takes FMLA leave.

31. In violation of the FMLA, Defendant denied Ms. Woods a three-day weekend shift

to accommodate her disability which was already previously approved and after she submitted signed petitions for schedule flexibility and terminated her employment despite having previously notified her office manager that she was taking emergency medical leave caring for her daughter who was undergoing a surgical procedure in a medical emergency. Defendant at all relevant times had actual and constructive knowledge of Plaintiff's disability through her request for accommodation and knowledge of her family emergency when her daughter was undergoing surgery in a medical emergency.

32. Defendant had no legitimate business reason for any of such acts.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Woods prays as follows:

A. That the court issue an order declaring Defendant G2 Secure Staff, LLC's actions to be in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq*., and Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*., and 29 C.F.R. 825 *et seq*., and declaring Plaintiff eligible to receive equitable and other relief;

B. Enter judgment against Defendant;

C. Issue a permanent injunction prohibiting Defendant from engaging in any discriminatory terminations and retaliation;

D. Enter judgment in favor of Plaintiff against Defendant for all monetary damages available under the law, including but not limited to treble damages, in amounts to be determined at trial;

E. Order Defendant to refrain from any retaliation against Plaintiff or any other person, for participating in or supporting this case in any manner;

F. Order Defendant to pay compensatory and punitive damages in amounts to be determined at trial;

   G.  Order Defendant to pay Plaintiff for lost wages;

   H.  Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs;

   I.  Order Defendant to pay pre-judgment and post-judgment interest as provided by law;

and

   J.  Grant any other relief the Court deem appropriate under the law.

               Respectfully submitted,

               */s/ David A. Branch*
               David A. Branch, D.C. Bar No. 438764
               Law Office of David A. Branch & Associates, PLLC
               1828 L Street, N.W., Suite 820
               Washington, D.C. 20036
               (202) 785-2805 phone
               (202) 785-0289 fax
               davidbranch@dbranchlaw.com

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all claims against Defendant.